Russell BUFALINO, Appellant,

v.

John W. HOLLAND, District Director of Immigration and Naturalization.

No. 12927.

United States Court of Appeals Third Circuit.

Argued Feb. 1, 1960.

Decided April 1, 1960.

Rehearing Denied April 27, 1960.

Claude O. Lanciano, Philadelphia, Pa., for appellant.

Joseph L. McGlynn, Jr., Philadelphia, Pa. (Harold K. Wood, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, HASTIE and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

On December 16, 1957, the Immigration and Naturalization Service (hereinafter called the Service) ordered the appellant Russell Bufalino to show cause why he should not be deported (1) under 8 U.S.C.A. § 1251(a) (2) [1] on the ground that he re-entered the United States without inspection at Miami, Florida, on April 30, 1956 and at New York, New York, on May 5, 1956, after brief sojourns in Cuba and Bimini respectively, and (2) under 8 U.S.C.A. § 1251(a) (5) [2] in that he failed to register with the Attorney General of the United States in January 1956 and January 1957, as required by 8 U.S.C.A. § 1305.[3] It is rep-

---

[1] "§ 1251. Deportable aliens—General classes

"(a) Any alien in the United States (including alien crewman) shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \*

"(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States;"

[2] "§ 1251.

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \*

"(5) has failed to comply with the provisions of section 1305 of this title unless he establishes to the satisfaction of the Attorney General that such failure was reasonably excusable or was not willful, or has been convicted under section 1306 (c) of this title, or under section 36(c) of the Alien Registration Act, 1940, or has been convicted of violating or conspiracy to violate any provision of sections 611–621 of Title 22 or has been convicted under section 1546 of Title 18;"

[3] "§ 1305. Change of address

"Every alien required to be registered under this subchapter, or who was required to be registered under the Alien Registration Act, 1940, as amended, who is within the United States on the first day of January following the effective date of this chapter, or on the first day of January of each succeeding year shall, within thirty days following such dates,

resented that on each re-entry he stated that he was a citizen of the United States.

During his hearing before a Special Inquiry Officer a third charge was lodged against him under 8 U.S.C.A. § 1251(a)(1)[4] viz., that at the time of the above alleged illegal entries he was excludable because he did not possess a valid visa or other entry document.

■ The appellant contested only the second of these charges and asserted that his failure to register with the Attorney General in January 1956 and 1957 was "reasonably excusable and was not willful." His application for termination of the proceedings pursuant to 8 U.S.C.A. § 1251a or, alternatively, for voluntary departure and preexamination under 8 U.S.C.A. § 1254(e) and 8 C.F.R. 235a.1 with advance waiver of excludability under 8 U.S.C.A. § 1251(a) was denied by the Special Inquiry Officer who found the appellant deportable on all three charges.

An appeal was taken to the Board of Immigration Appeals which affirmed the findings and conclusions of the Special Inquiry Officer.[5] Review of the order for deportation and denial of relief was then sought before the District Court for the Eastern District of Pennsylvania which granted a motion for summary judgment in favor of the District Director of Immigration and Naturalization, the respondent in this proceeding, and dismissed the petition for review.

On appeal from that judgment the appellant contends as he did before the Special Inquiry Officer, that his failure to provide the Attorney General with his address and other information as required by 8 U.S.C.A. § 1305 "was reasonably excusable and was not willful", because until the inception of these proceedings he had always thought Pittston, Pennsylvania his birthplace and that therefore he is not deportable under 8 U.S.C.A. § 1251(a)(5).

The evidence introduced before the Special Inquiry Officer on this issue consisted, in part, of appellant's school records. The record of a New York City school for 1910 shows his birth date as September 27, 1903 and that he was removing to Pittston, Pennsylvania; the record for 1914 shows his age to be ten years but no birth date is given; for 1915 only 1903 and 12 years of age are stated; and for 1917, October 29, 1903 and 14 years are given. All these records show Italy as appellant's birthplace.

The Service also submitted a workmen's compensation report which was filed in 1944 by the president of a company by which appellant was then employed. The report shows the appellant's

---

notify the Attorney General in writing of his current address and furnish such additional information as may by regulations be required by the Attorney General. Any such alien shall likewise notify the Attorney General in writing of each change of address and new address within ten days from the date of such change. Any such alien who is temporarily absent from the United States on the first day of January following the effective date of this chapter, or on the first day of January of any succeeding year shall furnish his current address and other information as required by this section within ten days after his return. Any such alien in the United States in a lawful temporary residence status shall in like manner also notify the Attorney General in writing of his address at the expiration of each three-month period during which he remains in the United States regardless of whether there has been any change of address. In the case of an alien for whom a parent or legal guardian is required to apply for registration, the notice required by this section shall be given by such parent or legal guardian."

4. "§ 1251
"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—
"(1) at the time of entry was within one or more of the classes of aliens excludable by the law existing at the time of such entry;"

5. The first decision of the Board of Immigration Appeals of August 6, 1958 was reviewed by the Attorney General who remanded the case to the Board by his opinion and order of August 18, 1958. The final decision of the Board was rendered on September 2, 1958.

nationality as Italian. Although he did not make this report he testified to the close friendship which existed between the president of the company and himself.

Appellant's voting registration for 1947 in Pittsburgh, Pennsylvania, gives his birthplace as Buffalo, New York and the date as November 29, 1905. Appellant denies that he supplied this information. He testified that when he registered to vote in Buffalo in 1925 or 1927 he gave his birthplace as Pittston, Pennsylvania.

His applications for a marriage license dated August 9, 1928 and for membership in the Elks Lodge in 1929, showed Pittston as his birthplace. The dates shown are September 29, 1904 and October 29, 1904. His social security and selective service registrations show the same place of birth. Both give his birth date as October 29, 1903.

Appellant's birth certificate is part of this record. It shows that he was born in Montedoro, Italy on September 29, 1903. Its correctness has been conceded by the appellant.

Oral testimony as to the date and place of birth of the appellant was offered by his wife, brother and two sisters. Carmella (Caroline) Sciandra Bufalino, his wife, could only say that she had always heard that he was born in Pittston, Pennsylvania on October 29, 1903.

Each of his siblings testified to having been born in Montedoro, Italy. His brother Calogero, or Charles, gave his date of birth as October 15, 1898. He did not know where the appellant was born. He could only remember the appellant in Pittston, Pennsylvania.

A sister, Cristina Teresina Cammella, testified that she was born on December 4, 1900 and had always heard that the appellant was born in Pittston, Pennsylvania on November 29th. She failed to give any year of birth.

The other sister, Josephine Bufalino Cordaro, stated her birth date to be February 7, 1897, making her, she thought, seven years senior to the appellant. She testified that to the best of her knowledge he was born in Pittston, Pennsylvania in the fall of 1903 or 1904.

She also stated that she came to this country in 1902 or 1903 accompanied by her parents, sister and brother Calogero;[6] that her father died in 1904;[7] that thereafter her mother took all four children back to Italy; that about a year later [January 13, 1906] she returned to this country with her mother and two brothers, leaving her sister in Italy; that after her mother died in 1910 she and the appellant returned to Italy from which they and their sister returned to the United States in 1914. The witness also related that after her marriage in Buffalo, New York, on March 18, 1914, the appellant lived at her house while attending school. She stated that she did not enroll him and that he must have enrolled himself.

In essence this witness testified that when she was almost seven years of age she and her family came to this country without appellant; that shortly after her father's death, known to have occurred nine months later, the family including the appellant returned to Italy.

In testifying that the appellant did not accompany her on her first trip from Italy to the United States in 1903 but did make the return trip after the death of their father, this witness is saying that the appellant was born in Pittston. It is now undisputed that, in fact, the appellant was born on September 29, 1903 in Montedoro, Italy, and arrived in New York on December 21, 1903, together

---

6. Exhibit 21 is a certified copy of a manifest record of appellant's entry into the United States at New York, New York on December 21, 1903. It shows that he was two months of age and was accompanied by his mother, two sisters and a brother, all of whom were destined to Angelo Bufalino, husband and father in Pittston, Pennsylvania.

7. Her sister testified that their father died on September 23, 1904, according to the markings on his tombstone in Pittston.

with this witness, their mother, brother and sister.

Having heard and observed the appellant's wife, brother and sisters, the Special Inquiry Officer was "not convinced that these persons testified truthfully concerning their information and belief, and the reputation in the family, as to the place of [appellant's] birth." The record provides ample justification for this conclusion.

Nor was the information contained in the affidavit of Calogero Bufalino, an uncle of the appellant, born in Montedoro, Italy, on April 5, 1878, any more reliable. He deposed as follows:

"* * * The fourth child, Rosario [Russell] Bufalino, was not born until after Cristina [the appellant's mother] left Montedoro for the United States. Your affiant further avers that his brother Angelo left Montedoro sometime early in the year 1903, at which time Cristina, his wife remained in Montedoro with the three children and at that time being pregnant. Your affiant further avers that he arrived in the United States on March 15, 1904 on the S.S. North America and immediately upon his landing in New York came to Pittston. Your affiant further avers that when the said Cristina Bufalino left Italy some six or eight months before he did, she was pregnant. * * * *"

In the light of the appellant's birth certificate the recollection of this deponent is inaccurate.

The appellant has attacked the introduction in evidence of the records referred to earlier. He contends that they fail to meet the requirements of judicial admissibility. But it is not necessary that they do so for they were admitted not in a judicial but in an administrative proceeding where the more strict rules of evidence do not obtain. Navarette-Navarette v. Landon, 9 Cir., 1955, 223 F.2d 234, 237. See also Marcello v. Ahrens, 5 Cir., 1954, 212 F.2d 830, 837, affirmed sub nom. Marcello v. Bonds, 1955, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107.

During the course of the hearing the appellant filed his application for pre-examination (Exhibit 35). He answered Item 14 as follows:

"During the past five years I have been employed by the following named persons or firms (if self employed, give nature of business):

| Name and Address of Employer | Type of Work & Salary | From | To |
|---|---|---|---|
| Bonnie Stewart | Efficiency Man $200 per wk. | 1950 | 1953 |
| Penn Drape Co. | Self Employed | Dec. 1953 | To Date |
| Fairfax, Inc. | Efficiency Man $125 per wk. | Dec. 1953 | To Date" |

The information given by the appellant in answer to this question was inaccurate and lacked required honesty and frankness. Instead of a direct answer to this simple inquiry the sum total of appellant's contradictory and confused testimony elicited on lengthy cross examination demonstrated that he had many other employment associations and income producing connections concerning which his testimony was intentionally and purposefully vague and uninformative.

The appellant undertook to prove himself a person of good moral character and introduced 13 witnesses and 161 affidavits to this end. The affidavits were on

printed forms [8] with blank spaces for the insertion of the deponent's business, number of years so engaged, nature of relationship with the appellant and the duration thereof. Except that those affidavits executed by naturalized citizens also provided space for the date and place of naturalization and deponent's certificate number, the affidavits as printed were identical.

◼ The appellant argued that it was an abuse of discretion to find that he had failed to show that he was a person of good moral character in the light of this volume of uncontradicted testimonials. The introduction of even as many as 161 affidavits and the oral testimony of 13 witnesses does not necessarily result in the establishment of good moral character. The Special Inquiry Officer was free to consider both the witnesses and the affidavits in terms of the association or knowledge upon which they testified or were based and to weigh this evidence together with all the other evidence in the case before him. He found that some of the affidavits were based upon a "nodding acquaintanceship" with the appellant rather than on close association and that some of the affiants had not seen him for protracted periods of time. He was within his province in determining that the appellant's evidence, large in volume though it was, did not overcome the unfavorable aspects of other evidence in the case against the appellant.

◼ In addition to the foregoing the Special Inquiry Officer found that the appellant gave false testimony in these proceedings with regard to "his business connections and income as to his belief relative to his place of birth, as to his adoption of a specific birth date, and as to his absences from the United States." Title 8 U.S.C.A. § 1101(f) (6) [9] provides that an alien who testifies falsely to procure benefits under the immigration and nationality laws is estopped from demonstrating himself to be a person of good moral character. Therefore, having determined that the appellant testified falsely in these proceedings in order to avoid deportation the Special Inquiry Officer was required by this section to find that the appellant was not a person of good moral character.

An attempt was made to register the birth of the appellant as having occurred at Pittston, Pennsylvania on October 29, 1903 in the records of the Clerk of the Orphans' Court of Luzerne County, Pennsylvania. Following is an extract from the findings of the Special Inquiry Officer in this regard:

"Exhibit 5 is a copy of a petition signed by Ettore Agolino as attorney for respondent. It is addressed to the Orphans Court of Luzerne County, Pennsylvania, and relates that the birth of respondent is recorded in the office of the Clerk, Orphans Court, in Birth Register Book,

8. "Commonwealth of Pennsylvania, County of Luzerne } SS.:

Affidavit

being duly sworn by law, deposes and says that he was born on the      day of      in      . That he presently resides at      . Your affiant further avers that he has known Russell Bufalino since      years, and has been closely associated with him in      , and through all of these years, he has known the said Russell Bufalino to be a person of high moral character, an outstanding citizen of the Commonwealth and a person of good repute. Your affiant further avers that he has never heard anything detrimental about the said Russell Bufalino from any of the persons that he knows who also know the aforementioned Russell Bufalino. Your affiant further avers that he is engaged in the business of      and has been for the last      years. Sworn to and subscribed before me this      day of      , 1958. "

9. "(f) For the purposes of this chapter— "No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was—
*     *     *     *     *
"(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;"

Volume 3, Page 52, as having occurred on October 29, 1903, at Pittston, Pennsylvania. The petition goes on to say *that a birth certificate is essential to petitioner in proceedings brought against him by the Immigration and Naturalization Service,* and that the petitioner prays the court to grant a rule to show cause why the order of the court impounding the aforesaid record should not be revoked and a birth certificate issued. This document also contains *an affidavit of respondent in which he deposes that the facts contained in the within petition are true and correct, to the best of his knowledge, information and belief.* The date of the filing of this petition is not shown but the document is shown to have been notarized on January 10, 1958. The same exhibit includes an order of the court on January 14, 1958, setting a hearing for February 7, 1958. Counsel for respondent stated on the record (p. 10) that the petition described above was filed on January 14, 1958. Counsel stated on the record (p. R-184 that the President Judge of the Orphans Court, Luzerne County, expunged the record of respondent's birth from the birth record book, acting upon the petition of counsel. *In his earlier testimony, at Page 189, respondent stated that he had never made an application for a birth certificate in Luzerne County;* that he had once inquired of his counsel if there is any way of getting a birth certificate; that his counsel said, 'I will get you affidavits when you are ready and we will do that'; and that this was 'years ago'." (Emphasis supplied.)

There can be no doubt that there was inserted in the records of Luzerne County, Pennsylvania a false entry of his birth place as Pittston, Pennsylvania and the date as October 29, 1903, which, undetected, could have been the foundation for the issuance to the appellant of a fictitious birth certificate. The circumstances of the patently false entry was called to the attention of the Orphans' Court of Luzerne County which issued an order impounding that record. While appellant disclaims all knowledge of the falsity of the entry—who else but he had a motive to design this deception? His denial stretches credulity to the breaking point.

In partial summary of his findings the Special Inquiry Officer said:

"Respondent's testimony as to his business connections and income, as to his belief relative to his place of birth, as to his adoption of a specific birth date, and as to his absences from the United States is contradicted, time and again by respondent's own testimony or by other evidence of record. I am convinced that in all these matters, respondent knowingly and deliberately told less than the truth. His assertions that prior to these proceedings he had no knowledge of the false birth record, which had been created in his name in the Luzerne County records, is, in my view, devoid of plausibility. From my observation of respondent's demeanor and upon appraisal of all his testimony, it is my finding that his claim that prior to January 20, 1958, he had always believed that he was born in Pittston, Pennsylvania, is unworthy of credence, and was, indeed, offered by respondent in these proceedings with full knowledge of its falsity. In the light of the early school records, I am convinced that the truth of the matter is that respondent, from the time he was old enough to understand, always knew that he was born in Italy. Since I find this portion of his testimony to be false, I further find that he has failed to establish that his failure to furnish the information required by Section 265 of the Immigration and Nationality Act was reasonably excusable or was not wilful. * * *"

Accordingly, the Special Inquiry Officer, affirmed by the Board of Immigra-

tion Appeals, found that the appellant's admitted failure to notify the Attorney General of his address or other information in compliance with 8 U.S.C.A. § 1305 in 1956 and 1957 was not reasonably excusable, was willful, and rendered him deportable under 8 U.S.C.A. § 1251 (a) (5). Appreciating that this officer had the benefit of appraising the credibility of the appellant and the witnesses as they appeared before him, and having considered the record we are not disposed to disturb the district court's acceptance of that determination.

■ The appellant next contends that the Attorney General abused his discretion in not granting him a waiver of excludability as provided in Section 7 of the Act of September 11, 1957 (71 Stat. 640), 8 U.S.C.A. § 1251a.[10] Simply stated and as applicable to this appellant that section provides that an alien who entered this country by fraud or misrepresentation or without proper documentation and who would, therefore, be subject to deportation under § 1251, may be saved from the application of that section by the exercise of discretion on the part of the Attorney General providing the alien is both the spouse of an American citizen and otherwise admissible.

The appellant comes within the terms of § 1251a to the extent that he is one who has entered the country by fraud and is married to an American citizen. Whether he was "otherwise admissible at the time of entry" as required is another question.

Appellant contends that if he was *not* otherwise admissible it was only because when he re-entered the United States in April and May of 1956 he lacked proper documentation, i. e. Form I-151, a card [11] received by all aliens who register pursuant to 8 U.S.C.A. § 1305. He submits that this deficiency may be waived under 8 C.F.R. § 242.7a which reads:

"§ 242.7a Waiver of documents; returning residents. Pursuant to the authority contained in section 211(b) of the act, an alien previously lawfully admitted to the United States for permanent residence, who, upon return from a temporary absence of less than one year in a country or countries of the Western Hemisphere, was excludable because of failure to have or to present a

10. "§ 1251a. Aliens deportable for fraud or misrepresentation; adjustment of status of certain aliens; conditions; waiver of ground of inadmissibility.

"The provisions of section 1251 of this title relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as (1) aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation, or (2) aliens who were not of the nationality specified in their visas, shall not apply to an alien otherwise admissible at the time of entry who (A) is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence; or (B) was admitted to the United States between December 22, 1945, and November 1, 1954, both dates inclusive, and misrepresented his nationality, place of birth, identity, or residence in applying for a visa: *Provided,* That such alien described in clause (B) shall establish to the satisfaction of the Attorney General that the misrepresentation was predicated upon the alien's fear of persecution because of race, religion, or political opinion if repatriated to his former home or residence, and was not committed for the purpose of evading the quota restrictions of the immigration laws or an investigation of the alien at the place of his former home, or residence, or elsewhere. After September 11, 1957, any alien who is the spouse, parent, or child of a United States citizen or of an alien lawfully admitted for permanent residence and who is excludable because (1) he seeks, has sought to procure, or has procured, a visa or other documentation, or entry into the United States, by fraud or misrepresentation, or (2) he admits the commission of perjury in connection therewith, shall on and after September 11, 1957, be granted a visa and admitted to the United States for permanent residence, if otherwise admissible, if the Attorney General in his discretion has consented to the alien's applying or reapplying for a visa and for admission to the United States."

11. It also serves as evidence of an alien's lawful admission to the United States. 8 C.F.R. 264.1(c) (1).

valid passport, immigrant visa, reentry permit, border crossing card, or other document required at the time of entry, may be granted a waiver of such requirement in the discretion of the district director, or in deportation proceedings in the discretion of the special inquiry officer: *Provided,* That such alien (a) was not otherwise excludable at the time of entry, or (b) having been otherwise excludable at the time of entry is with respect thereto qualified for an exemption from deportability under section 7 of the act of September 11, 1957, *and (c) is not otherwise subject to deportation.* Denial of a waiver by the district director shall not be appealable but shall be without prejudice to renewal of an application and reconsideration in proceedings before a special inquiry officer." (Emphasis supplied.)

This regulation conditions the exercise of discretion on the alien being "not otherwise subject to deportation". But the appellant was otherwise deportable at the time of both entries (April 30 and May 5, 1956) under 8 U.S.C.A. § 1251 (a) (5) because he had failed to give required information to the Attorney General in January 1956 in compliance with 8 U.S.C.A. § 1305. Therefore under this regulation the Special Inquiry Officer was without authority to exercise his discretion to waive the appellant's lack of documentation.[12]

It follows that the appellant was not "otherwise admissible" under 8 U.S.C.A. § 1251a when he entered the country in 1956. Appellant's failure to demonstrate that he was "otherwise admissible" results in his being ineligible as a matter of law for the exercise of the Attorney General's discretion because he has failed to meet the minimal statutory prerequisites.[13]

■ Appellant further contends that the Attorney General has abused his discretion in not allowing him to depart voluntarily as provided in 8 U.S.C.A. § 1254(e).[14]

Because the appellant is subject to deportation under 8 U.S.C.A. § 1251(a) (5) the provisions of 8 U.S.C.A. § 1254(e) require that he meet the test of 8 U.S.C.A. § 1254(a) (5) which reads:

"(a) As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted

12. Although appellant's brief implies that he has applied for a waiver of documentary deficiency such is not the case. The Special Inquiry Officer has stated, "No application has been made in this case for such waiver but if one were filed I would deny [it] in the exercise of administrative discretion because I do not find that there was good cause for [his] failure to present the required document, since he did not act in good faith in effecting his entry but indeed procured his entry by fraud."

13. And even had he done so the favorable exercise of discretion under § 1251a would not be assured because "the statute does not contemplate that all aliens who meet the minimum legal standards will be granted suspension [of deportation]. Suspension of deportation is a matter of discretion and of administrative grace, not mere eligibility; discretion must be exercised even though statutory prerequisites have been met." United

States ex rel. Hintopoulos v. Shaughnessy, 1957, 353 U.S. 72, 77, 77 S.Ct. 618, 621, 1 L.Ed. 652. See also Jay v. Boyd, 1956, 351 U.S. 345, 354, 76 S.Ct. 919, 100 L.Ed. 1242; MacKay v. McAlexander, 9 Cir., 1956, 268 F.2d 35.

14. "(e) The Attorney General may, in his discretion, permit any alien under deportation proceedings, other than an alien within the provisions of paragraphs (4)–(7), (11), (12), (14)–(17), or (18) of section 1251(a) of this title (and also any alien within the purview of such paragraphs if he is also within the provisions of paragraph (4) or (5) of subsection (a) of this section), to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure under this subsection."

for permanent residence, in the case of an alien who—

\* \* \* \* \* \*

"(5) is deportable under paragraphs (4)–(7), (11), (12), (14)–(17), or (18) of section 1251(a) of this title for an act committed or status acquired subsequent to such entry into the United States or having last entered the United States within two years prior to, or at any time after June 27, 1952, is deportable under paragraph (2) of section 1251(a) of this title as a person who has remained longer in the United States than the period for which he was admitted; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all such period he has been and is a person of good moral character; has not been served with a final order of deportation issued pursuant to this chapter in deportation proceedings up to the time of applying to the Attorney General for suspension of deportation; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen or an alien lawfully admitted for permanent residence."

As a person who is deportable under § 1251(a) (5) the appellant must meet the critical requirements (1) that he has been "physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act" constituting a ground for deportation and (2) "proves that during all of such period he has been and is a person of good moral character." The acts complained of are his failure in January of 1956 and January of 1957 to provide the Attorney General with his address and other information as required by § 1305. Manifestly

he cannot satisfy the requirement of having been physically present in the United States for a continuous period of not less than ten years immediately following the commission of such acts. It follows that he is similarly unable to meet the additional requirement of proving himself to have been a person of good moral character during all of such ten years.

■ Appellant's last application is for preexamination under 8 C.F.R. § 235a.1 which reads as follows:

"§ 235a.1. *Application.* Preexamination may be authorized for any alien, except a citizen of Canada, Mexico, or islands adjacent to the United States who files an application for preexamination on Form I–63 prior to December 1, 1958, intending to apply to a consular officer of the United States in Canada for an immigrant visa and who believes that he will be admissible to the United States under all the provisions of the immigration laws if in possession of an immigrant visa, or that he is prima facie eligible for a waiver of excludability under section 5 or 7 of the act of September 11, 1957; that he will be able to obtain the prompt issuance of an immigrant visa, and that he is a person of good moral character. Any alien who files Form I–63 shall be deemed to have thereby abandoned his nonimmigrant status in the United States. Form I–63 shall be submitted to the office of the Immigration and Naturalization Service having jurisdiction over the applicant's place of residence, and may be filed separately or in conjunction with a petition for non-quota or preference quota status under Part 204 or 205 of this chapter. If the applicant is under deportation proceedings, the application shall be made to the special inquiry officer during the hearing pursuant to Part 242 of this chapter. The applicant shall be notified of the decision, and if the application is denied, of the reasons

therefor and of his right to appeal under Part 3 or 103 of this chapter."

He fails to meet the requirements of that regulation because he has not shown himself to be a person of good moral character and cannot demonstrate that he is prima facie eligible for a waiver of excludability in view of his ineligibility for that relief under 8 U.S.C.A. § 1251a as determined by the Special Inquiry Officer.

Under 8 C.F.R. 235a.2 the application for preexamination had to be completed before July 1, 1959. Obviously this was not done in this case.[15]

In his findings the Special Inquiry Officer made reference to the fact that appellant had been subpoenaed to appear before the Joint Legislative Committee of the State of New York on Government Operations (also known as the Watchdog Committee) on January 9, 1958 and had invoked his constitutional right under the Fifth Amendment to decline to answer on the advice of counsel. The findings also noted the appellant's appearance before a Federal Grand Jury in New York City on January 7, 1958, when he took the same action. The Special Inquiry Officer also observed that at the deportation hearings appellant's counsel asked and the appellant answered the same questions he had refused to answer before the New York State Committee. The appellant asserted that similar references, made at each stage of the proceedings by the Board of Immigration Appeals, the Attorney General and the District Judge, indicated that his refusal to answer originally resulted in his being regarded as undeserving of the consideration to which he would have otherwise been entitled had he not invoked the Fifth Amendment. The appellant contended that he was claiming no more than his constitutional right and that any derogative inference drawn therefrom in the deportation proceedings was an abuse of discretion.

While it is true that his conduct before investigative bodies was the subject of comment, such conduct was patently not determinative of the decisions which find ample basis in this record. The comments made were not prejudicial to the appellant so as to constitute abuse of discretion.

The appellant also suggests that newspapers sensationally linked him to a meeting of various individuals at the home of Joseph Barbara in Apalachin, New York, on November 14, 1957, and that this circumstance was noticed in these proceedings to his prejudice. There is no evidence to support such an implication.

Finally, the appellant attacks the judgment of the district court because the judge said he felt "that in view of all the circumstances and the atmosphere surrounding the case the [appellant] has not sustained the burden placed upon him under the law and that the Government officials having charge of the inquiry did their full duty." He claims that the court "should have *reviewed* the record, evaluated the evidence or lack of evidence pertinent to the issue and should have reached its own conclusion as to whether the appellant was or was not entitled to the discretionary relief provided for by the Act." He failed to show that the court did less.

The right of review by the court of the action of the administrative agency in this case is limited to whether the decision of deportability was based on reasonable, substantial and probative evidence and was neither arbitrary, capricious nor violative of procedural due process. United States ex rel. Brzovich v. Holton, 7 Cir., 1955, 222 F.2d 840, 842; Fougherouse v. Brownell, D.C.Or.1958, 163 F.Supp. 580, 584.

The expression used by the trial judge in his opinion that he was "not unmindful of the facts of the case as expressed in the written record of the testimony and the official records as to other phases

15. In any event both regulations, 8 C.F.R. 235a.1 and 235a.2 were revoked on August 12, 1959, 24 F.R. 6477.

of the case contained in the various documents" after his allusion to the "hundreds of pages of testimony and numerous exhibits [that] have been offered in evidence", indicates that he accorded the appellant full judicial review. Our own analysis of the underlying evidence leads us to the conclusion that his order for summary judgment in favor of the respondent and dismissal of the petition for review was justified.

The Order of the District Court will be affirmed.