Russell **BUFALINO**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE**, Respondent.

No. 16736.

United States Court of Appeals, Third Circuit.

Argued Nov. 27, 1972.

Decided Jan. 30, 1973.

Jack Wasserman, Washington, D. C., for petitioner.

George W. Masterton, Department of Justice, Washington, D. C., for respondent.

Before McLAUGHLIN, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

McLAUGHLIN, Circuit Judge.

The United States Immigration and Naturalization Service has been endeavoring for the last fourteen years (since December 16, 1957) to deport this alien petitioner. During that whole period the Service has met with time consuming maneuvers that up to now have resulted in Bufalino continuing his illegal stay in the United States. For the past ten years his present attorney has been in charge of the tactics which have held petitioner in this country despite the fact that he deliberately and falsely asserted United States citizenship. In passing we note that Bufalino was definitely present November 14, 1957, at the notorious Appalachian, New York gangland convention. He was arrested at that time in connection with his attendance at that meeting. However, the Service hearing officer said that the

record did not establish that Bufalino was a mobster. The officer noted that his deportation decision was the result of Bufalino's failure to establish good moral character, his lying under oath regarding his birthplace and other false testimony and his two fraudulent entries into the United States in 1956. Bufalino through his lawyer, the same one as in this litigation, brought an action for review of the deportation order in the District Court of the Eastern District of Pennsylvania. That court granted summary judgment to the Service. This Court affirmed that ruling. Certiorari to the United States Supreme Court was denied. Four days after that Bufalino's lawyer requested that Bufalino's deportation be stayed because he would be persecuted if he was deported to Italy. That application was denied, so petitioner and his attorney went down to the District of Columbia and came up with the proposition that said deportation had been prejudged by the United States District Court for the Eastern District of Pennsylvania. The District Court turned the matter over to the Administrative Authority. Bufalino also sought the Board's reconsideration of the deportation order. Permanent residence for petitioner was denied as was Bufalino's second attempt not to be deported to Italy. In 1965 in the District of Columbia, he and his lawyer again tried out the contention that petitioner's claim had been prejudged. The Court of Appeals there sustained the position of the Service and dismissed the proceedings. After that this Court was faced with another attack from Bufalino by the same attorney in 1967, alleging "illegal wiretapping." That attorney refused to make identification of the tapes. His motion to enlarge the hearing was denied.

Our consideration of the present petition in this matter is limited by 8 U.S.C. § 1105a(a)(1) concerning timeliness, to the Board of Immigration Appeals order dated June 5, 1967 and its supplemental order of October 7, 1971. Our sole question for determination as to said order and its supplement is whether the or-

der's issuance was an abuse of discretion by the Board. Lopez v. Immigration and Naturalization Service, 356 F.2d 986 (3 Cir. 1966), cert. den. 385 U.S. 839, 87 S.Ct. 88, 17 L.Ed.2d 73. See also Velasquez Espinosa v. Immigration and Naturalization Service, 404 F.2d 544 (9 Cir. 1968); Gena v. Immigration and Naturalization Service, 424 F.2d 227 (5 Cir. 1970). Rosa v. Immigration and Naturalization Service, 440 F.2d 100 (1 Cir. 1971).

The June 5, 1967 order denied petitioner's motion to reopen, reconsider, and then terminate the deportation proceedings. Such an order comes within 8 U.S.C. § 1105a(a) as a "final order of deportation," Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), and since petition for review was timely filed on June 26, 1967, this court has jurisdiction. Petitioner relies substantially on the applicability of three cases decided after the deportation decision. He asserts that these necessitate reconsideration of his deportability. He urges that in the light of Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) and Immigration and Naturalization Service v. Errico, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966) such decision would be an abuse of discretion. Actually, based on the pertinent law, including the above noted opinions, said conclusion is not only proper but it soundly called for the end of this spurious litigation and for the prompt deportation of petitioner.

 The latter has failed to file address reports each year in accordance with 8 U.S.C. § 1305, thus making him deportable under 8 U.S.C. § 1251(a)(5). Woodby demands that evidence as to deportability must be "clear, unequivocal and convincing." In this instance, the Service has definitely shown that the required address reports have not been made. Under 8 U.S.C. § 1251(a)(5) it is petitioner's burden to show that "such

failure was reasonably excusable or was not willful," in order to avoid deportation. Petitioner's testimony as to his good faith in this regard was not only inconsistent but designedly untruthful. The finding of the inquiry officer and the Board that petitioner had not met his burden of showing excusability and nonwillfulness was obviously no abuse of discretion. He had wittingly violated the address filing requirements and made himself subject to deportation.

Petitioner also questions the Board's ruling that his return to this country following trips to Bimini and Cuba constituted an entry within the meaning of 8 U.S.C. § 1101(a)(13). On his return, petitioner knowingly made a false claim of United States citizenship, thereby avoiding inspection as an alien. Fleuti held that permanent resident aliens should be deemed to have made an entry only if their departure could be construed as one "meaningfully interruptive of the alien's permanent residence." 374 U.S. at 462, 83 S.Ct. at 1812. The language there implied that a resident alien's innocent excursion outside of this country was not intended as a departure disruptive of his resident alien status. That standard has recently been interpreted by the Board in a decision re aliens and citizenship, 41 L.W. 2267 (11/21/72). It holds that there are numerous factors to be considered to determine "innocent, casual, and brief excursion" and that a manifested intent to abandon permanent residency in the United States is merely one factor, and not the decisive factor, in such a consideration. A false claim of citizenship obviously frustrates a major policy of our immigration law which is the inspection of aliens. This petitioner not only brazenly pretended to be a United States citizen but used that lying assertion to leave and return to the United States on at least three occasions without being inspected as the alien he was and is. In Zimmerman v. Lehmann, 339 F.2d 943 (7 Cir. 1965), cert. den. 381 U.S. 925, 85 S.Ct. 1559, 14 L.Ed.2d 683 on which petitioner relies, the claim of United States citizenship, though false, was not knowingly so and was thus held to be "innocent" under Fleuti. There is no honest basis in this litigation for asserting that a conscious misrepresentation of United States citizenship as Bufalino presented here, for the purpose of avoiding inspection, would be an *innocent* excursion calling for application of the Fleuti leniency standard. To the contrary, it would be a total miscarriage of justice to reopen the proceeding on that theory. There is nothing in this fourteen years of litigation that would warrant the claim that the Board's decision concerning this fraudulent entry was an abuse of discretion.

Finally, petitioner urges that even if this were held to be an entry, that 8 U.S.C. § 1251(f) as interpreted in Errico excuses deportability based on these same grounds. In line with the statutory language of 1251(f) and a proviso to the regulations which the Board followed (8 C.F.R. 242.7(a)), it plainly appears that a waiver of the fraud and the quantitative documentary grounds alone, have no effect if the alien is "otherwise inadmissible" on a qualitative ground. Jolley v. Immigration and Naturalization Service, 441 F.2d 1245 (5 Cir. 1971), cert. den. 404 U.S. 946, 92 S.Ct. 302, 30 L.Ed.2d 262 (draft evasion); Gambino v. Immigration and Naturalization Service, 419 F.2d 1355 (2 Cir. 1970), cert. den. 399 U.S. 905, 90 S.Ct. 2195, 26 L.Ed.2d 559 (entry as stowaway). In situations involving "otherwise inadmissible," there is nothing in Errico to justify the waiver of the documentary requirements for entry as petitioner seeks here. Matter of K, 9 I. & N. Dec. 585 (B.I.A.1962). This court in Bufalino v. Holland, 277 F.2d 270 (3 Cir. 1960), cert. den. 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed.2d 85 held that under 8 U.S.C. § 1251(a)(5), petitioner was "otherwise inadmissible" at the time of the entry in question. 277 F.2d at 278. Errico dealt with a problem where the fraudulent citizenship representations were made to circumvent quota restrictions and not to destroy the primary

purpose of the regulation, which was to force alien inspection (as in the instant matter). In Errico, neither of the aliens was subject to deportation on anything other than the entry charge. That court had no reason to consider the effect of the regulation previously discussed. The issue before us is completely distinguished from Errico. It offers no sound reason for reopening or reconsidering the order of the Immigration and Naturalization Service.

The final item for us to consider is whether the supplemental order of April 28, 1971, which resulted from the evidentiary hearing before a special inquiry officer, was an abuse of discretion. This depends on whether the supplemental administrative proceedings concerning the government's evidence were in accordance with this court's order of February 20, 1969, and whether the Board had correctly concluded that no evidence obtained by illegal electronic surveillance had tainted that evidence relied on in the determination of the question of deportability. There is no real question before us of whether petitioner was entitled to discretionary relief since the Board afforded him every opportunity to show taint in the record, and he failed to do so. In the hearing before the special inquiry officer, the prosecuting attorney and his principal investigator stated that they had no knowledge whatsoever of wiretapping in the cause and that there was none to the best of their knowledge. It is very clear that in order for evidence to have an effect on the government theory, the prosecutor must have knowledge of it so that he could use it in establishing his position. The inquiry officer passed upon all the material presented by the trial attorney and found that the latter had not utilized F.B.I. information for anything of substance in the litigation. He also concluded that there was no tainted information contained in the record of the 1969 proceedings. There was an affidavit in evidence of B. Franklin Taylor, an official of the Department of Justice, which stated that logs and other information turned over to Bufalino contained the only conversations in which he had participated, or which had occurred on his premises, monitored by the United States. Bufalino, during the course of the hearing, refused to designate any portion of the 1964 proceeding which he said had been tainted. These factors point sharply to the frivolous nature of the delaying tactic on behalf of petitioner which has been spread over these proceedings since their inception. The present contention for petitioner is founded upon a Detroit police tapping of the telephone of one William Bufalino, an attorney who is a relative of petitioner. Re-examining the affidavits of petitioner's named attorney and his investigator produces nothing that might possibly have been overheard which could have been used to the disadvantage of petitioner.

In light of this and the contemptuous delaying procedures of petitioner throughout the past fourteen years, it is plainly unnecessary to authorize further supplemental administrative evidentiary proceedings on the issue of whether evidence relied on in the deportation proceeding resulted from the F.B.I. monitoring. While the established policy of the Department of Justice is to make disclosure to the courts of electronically monitored conversations of defendants in pending litigation, there is in this instance no possible purpose to such proposed course other than do whatever could be done to mess up petitioner's deportation once more. Proper care was taken to make certain that no illegally tainted wiretap evidence was used.

The Board's orders of June 5, 1967 and October 7, 1971 are affirmed; the statutory stay of deportation is vacated and the petition for review is dismissed.

VAN DUSEN, Circuit Judge (concurring).

I concur in the result reached in the foregoing opinion, but wish to add this statement concerning petitioner's claim of improper electronic surveillance. Petitioner contends that his telephone con-

versations were monitored by various agencies of the Federal and State Government and that either evidence secured from that surveillance or the fruits derived from that evidence were utilized in connection with the charges of deportability, the evaluation of his credibility, and the denial of discretionary relief.

Petitioner first raised this issue by a supplemental motion to reopen the deportation proceedings, filed with the Board of Immigration Appeals on February 23, 1967.[1] That motion was denied. Matter of Bufalino, 12 I. & N. Dec. 277 (BIA 1967).

However, while on appeal, the Government by Memorandum of January 27, 1969, reported to this court that conversations of petitioner had been monitored by the F.B.I. The Government felt, apparently relying on the decisions in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), that a remand would be necessary in order to examine whether or not the evidence relied upon in the deportation proceeding had been infected by taint.[2]

After consideration of that Memorandum, this court, by order of February 20, 1969, remanded the case to the Board of Immigration Appeals "for supplemental administrative proceedings, including an evidentiary hearing, solely on the issue of whether any evidence relied on in petitioner's deportation proceeding resulted from the electronically monitored conversation referred to on page 2 of the MEMORANDUM of the United States. . . ."

At the hearing petitioner's attorney extensively and skillfully examined Mr. Vincent Schiano, the service officer assigned to the petitioner's case, and his former assistant, Mr. James Hostetter, in an effort to obtain an admission that they relied on evidence derived from electronic surveillance. Both of these men emphatically denied authorizing or, to the best of their knowledge, relying on such evidence. They both testified that the case they developed against the petitioner "was based on evidence they secured independently of investigatory reports by federal, state or local governments." (Petitioner's Supp. Brief, SA 24).[3]

1. His motion requested the Board to reopen the proceedings against petitioner in order "to ascertain the extent to which evidence herein and fruits thereof were obtained by illegal wiretapping and by unauthorized interceptions of the telephones of [petitioner] and his attorneys." (N.T. Part 14, at 12)

2. The pertinent portion of the Government Memorandum stated:
 ". . . [P]ursuant to the established policy of the Department of Justice to make disclosure to the courts of electronically monitored conversations of defendants in pending cases, Respondent advises this Court that conversations of Petitioner have been monitored by the Federal Bureau of Investigation on several occasions in the past. Although Respondent has stated, and still contends and believes, that no evidence relied upon in the deportation proceeding resulted from information obtained in the course of electronic surveillance, we believe that, under the authorities, the subject matter of the

monitored conversations is such that the presence or absence of taint cannot be determined from the monitoring logs by this Court as a matter of law."

3. For instance, Mr. Hostetter on cross-examination stated:
 "Q. . . . Do you have any knowledge, either affirmative or negative, as to whether or not any state or county official conducted electronic surveillance in the Bufalino case, and I am concerned with the period prior to September 9, 1964?
 "A. I do not have the slightest suspicion that any type of electronics or wire tapping existed by any state or local or federal law enforcement agencies prior to the date of the second hearing.
 "Q. In other words, when you say you have no suspicion your attention was not called to it. Is that correct?
 "A. It just did not exist in any of the records shown to me. Mr. Wasserman, I might explain too that

In addition, the Government submitted an affidavit from B. Franklin Taylor, the Deputy Chief of the Administrative Regulations Section, Criminal Division, United States Department of Justice, that provided:

"The Department of Justice has made appropriate inquiry to ascertain all instances in which conversations occurring in his premises have been monitored by electronic surveillance conducted by the United States. The inquiry has revealed that the only instances in which such conversations have been monitored are reflected in the logs of those conversations which have been furnished to Bufalino for the supplemental administrative proceedings ordered by the Court of Appeals for the Third Circuit. . . ."

Petitioner contends that under 18 U.S.C. § 3504[4] the affidavit submitted by the Government was insufficient, since it failed to reveal whether the Government had inquired into the possibility of unlawful surveillance by agencies other than the United States. It is clear that § 3504(a)(1) places an affirmative duty upon the Government to either affirm, or deny the allegation of a party aggrieved by inadmissible evidence derived from unlawful electronic surveillance. As the Supreme Court has recently noted, § 3504 "actually places or codifies a burden upon the Government, rather than the defendant." Gelbard v. United States, 408 U.S. 41, 56, 92 S.Ct. 2357, 2365, 33 L.Ed.2d 179 (1972); see United States v. Popkin, 460 F.2d 328 (1st Cir. 1972); In re Evans, 146 U.S.App. D.C. 310, 452 F.2d 1239 (1971).

However, based on the facts presented in a lengthy and complex record, I believe that the testimony of the two officers of the Immigration Service, who were active in the investigation and presentation of the evidence in the deportation proceedings, and the affidavit submitted by the Department of Justice constitute an effective compliance with § 3504. Under the circumstances presented by this record, I do not read § 3504 to require, as has been suggested by petitioner's attorney, the Government to produce every F. B. I. agent who has "participated in the surveillance of Mr. Bufalino and everyone else who conducted investigation of Bufalino. . . ." (N.T. S–110, Nov. 17, 1970).

I was an investigator for 25 years. It doesn't take you very long if you are reading a file to know whether it's a wire tap or whether it's a track surveillance or whether it is just a result of someone's efforts. You can readily tell it the moment you start reading it." (N.T. S–51, Oct. 7, 1970)

4. Section 3504 provides in full:

"§ 3504. Litigation concerning sources of evidence

"(a) In any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, or other authority of the United States—

"(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act;

"(2) disclosure of information for a determination if evidence is inadmissible because it is the primary product of an unlawful act occurring prior to June 19, 1968, or because it was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, shall not be required unless such information may be relevant to a pending claim of such inadmissibility; and

"(3) no claim shall be considered that evidence of an event is inadmissible on the ground that such evidence was obtained by the exploitation of an unlawful act occurring prior to June 19, 1968, if such event occurred more than five years after such allegedly unlawful act.

"(b) As used in this section 'unlawful act' means any act the use of any electronic, mechanical, or other device (as defined in section 2510(5) of this title) in violation of the Constitution or laws of the United States or any regulation or standard promulgated pursuant thereto. Added Pub.L. 91–452, Title VII, § 702(a), Oct. 15, 1970, 84 Stat. 935."

On this record, the hearing officer properly concluded that his jurisdiction was "bounded strictly by the four corners of the orders of the Court of Appeals. . . ." (see order of the Special Inquiry officer, petitioner's supp. brief and appendix, SA 7), since petitioner failed to file any motions with this court seeking to enlarge the scope of the hearing into evidence tainted by unlawful electronic surveillance ordered by the court on February 20, 1969, which he had previously consented to on February 3, 1969. During the period between February 3, 1969, and October 21, 1970, various motions were made by both parties and acted upon by this court.[5] Yet, despite this court's continued consideration of the terms of the remand, petitioner never requested an expansion or alteration of that part of the February 20, 1969, order set forth at page 2 and in note 2, *supra*. I believe that it is too late to come to this court and request renewed administrative proceedings to look into additional possible electronic surveillance more than one year after the administrative proceedings have been terminated (October 7,

1971) and more than two years after the termination of the hearings pursuant to this court's February 20, 1969, order.

Furthermore, the Government has provided petitioner with the logs of conversations overheard by the Federal Bureau of Investigation through electronic surveillance. The logs were from surveillance conducted at four different locations extending over approximately a two-year period (see letter from Charles Gordon, General Counsel, Immigration and Naturalization Service, to Jack Wasserman, petitioner's counsel, on June 24, 1970). These logs provided petitioner with every opportunity to designate conversations that he believed resulted in tainted evidence relied upon in the deportation proceeding. This he steadfastly refused to do.[6]

Instead, petitioner made the general claim that the information provided to him that was derived from electronic surveillance was incomplete. However, as was properly noted in United States v. De Sapio, 299 F.Supp. 436, 449 (S.D. N.Y.1969):

"The cases indicate that a representation by the government that it has not

---

5. The following motions and orders were among those entered by this court in the period from January 27, 1969, to November 21, 1970:

*January 27, 1969*—The Government requested a remand for the reasons set forth in footnote 2, *supra*.

*February 3, 1969*—Petitioner consented "to the request of respondent that supplemental administrative proceedings be authorized to ascertain whether any evidence relied upon in the deportation proceedings resulted from electronically monitored conversations of petitioner, his attorneys, or agents, and the fruits thereof."

*February 20, 1969*—The court issued an order pursuant to the Government's motion.

*April 14, 1970*—The Government requested a protective order "prohibiting any . . . parties . . . from disclosing the contents of the communication to any third persons. . . ."

*April 17, 1970*—Petitioner opposed the above motion.

*May 1, 1970*—The court granted the motion for protective order.

*September 8, 1970*—Petitioner moved to enlarge the hearing into whether discretionary relief was improperly denied.

*October 21, 1970*—The court denied this motion to enlarge "without prejudice to the right of petitioner to apply for administrative hearings on discretionary relief at the time of the argument on the petition to review contemplated by the order of February 20, 1969."

6. By letter dated July 3, 1970, petitioner's counsel stated:

"In response to your request that I identify the conversations which resulted in the taint of evidence relied on in the deportation proceedings, I wish to advise you that I do not feel that I am obliged to make such identification at this time."

Subsequently, at the supplemental administrative proceeding ordered by this court, petitioner's counsel again refused to designate the evidence which he claimed to be tainted (N.T. S–2, Oct. 7, 1970).

conducted electronic surveillance or wire tapping of a defendant's premises, or used such means to overhear his conversations, is sufficient to deny a motion to suppress. Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (March 24, 1969) (footnote denying certiorari to some of the petitioners); United States v. Covello, 410 F.2d 536 (2d Cir., March 24, 1969). A hearing will not be held upon a general, unsubstantiated request to inquire into whether electronic surveillance or wire tapping took place in connection with this case. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); United States v. Kelley, 395 F.2d 727, 730 (2d Cir. 1968)."

Under the Supreme Court's decision in Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), it was proper to deny petitioner's request to further examine B. Franklin Taylor (the above-mentioned affiant). While *Alderman* requires the Government to disclose conversations illegally overheard, it does not require an adversary proceeding and full disclosure for resolution of every issue raised by electronic surveillance. Nor does it provide the petitioner "an unlimited license to rummage in the files of the Department of Justice." 394 U.S. at 185, 89 S.Ct. at 973; Taglianetti v. United States, 394 U.S. 316, 317, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969).

Since the petitioner has not demonstrated the necessary "taint" to justify the protection offered by *Alderman*, the Board of Immigration Appeals did not abuse its discretion when it refused to reopen petitioner's deportation proceeding. Therefore, I would affirm the Board's orders of June 5, 1967, and October 7, 1971.

Also, I concur in the opinion of Judge ADAMS.

ADAMS, Circuit Judge (concurring).

In this appeal, the Court is urged to reverse a decision by the Board of Immigration Appeals (hereinafter the "Board") denying petitioner's motion to reopen and reconsider a deportation order originally entered in 1958, upheld by this Court in 1960, and reaffirmed by the Board in 1965. Although the factual background of this controversy has previously been set forth by this Court in Bufalino v. Holland, 277 F.2d 270 (3d Cir.), cert. denied, 364 U.S. 863, 81 S.Ct. 103, 5 L.Ed.2d 85 (1960), and has been supplemented by the majority here, an appreciation of the precise legal issues properly tendered in the present appeal requires a brief recapitulation.

In 1957, the Immigration and Naturalization Service (hereinafter "I.N.S.") ordered Bufalino to show cause why he should not be deported, first, for having reentered the United States without inspection in 1956 after brief trips to Cuba and Bimini,[1] and, second, for having failed to report his address with the Attorney General as required by 8 U.S.C. § 1305.[2] During his hearing before a Special Inquiry Officer, Bufalino was charged on a third ground for having been excludable at the time of his 1956 entries because of not possessing a valid visa or other entry document.[3]

Petitioner contested only the second of these charges, asserting that his failure to register with the Attorney General was "reasonably excusable and was not willful." The Special Inquiry Officer found Bufalino deportable on all three charges, and the Board affirmed.

Petitioner then sought review of the order of deportation. The district court granted a motion for summary judgment in favor of the District Director of I.N.S. and dismissed the petition for review. On appeal, this Court affirmed after an exhaustive examination of the record. Bufalino v. Holland, *supra*. Among other things, the Court rejected Bufalino's

1. *See* 8 U.S.C. § 1251(a)(2).

2. *See id.* § 1251(a)(5).

3. *See id.* § 1251(a)(1).

contention that "his failure to provide the Attorney General with his address and other information as required by 8 U.S.C. § 1305 was reasonably excusable and was not willful. . . ."

After the Supreme Court denied certiorari in this case, 364 U.S. 863, 81 S. Ct. 103 (1960), Bufalino spent several years attacking his deportation order on other grounds in other forums. *See* Attorney General v. Bufalino, 125 U.S. App.D.C. 273, 371 F.2d 738 (1966); Bufalino v. Kennedy, 116 U.S.App.D.C. 266, 322 F.2d 1016 (1963). The details of the various protracted proceedings taking place during those years are not relevant to the issues properly raised in the present appeal, and therefore need not be recounted here.

On December 28, 1966, however, Bufalino filed with the Board a motion to reopen, reconsider, and terminate the deportation proceedings, arguing that (1) several decisions rendered by the Supreme Court *after* the deportation order entered in 1958 and affirmed by this Court in 1960 required a different result in his case; and (2) a hearing should be held "to ascertain the extent to which evidence herein and fruits thereof were obtained by illegal wiretapping and by unauthorized interception" of his telephone and those of his attorneys.

After the Board denied the motion on June 5, 1967, Bufalino filed the present petition for review. This Court, by order dated February 20, 1969, retained jurisdiction but remanded the cause for supplemental administrative proceedings limited to the issue whether any evidence relied upon in the deportation proceeding resulted from illegal wiretapping. After an evidentiary hearing, the Special Inquiry Officer concluded that no evidence relied upon in the deportation proceeding resulted from conversations overheard through electronic surveillance. The Board affirmed, and the case, in this posture, is again before this Court.

Before deciding the legal questions presented, it is essential to determine what issues are properly before us. Jurisdiction is here limited by 8 U.S.C. § 1105a(a)(1): "a petition for review may be filed not later than six months from the date of the final deportation order. . . ." Although we may review judgments on motions to reopen, Giova v. Rosenberg, 379 U.S. 18, 85 S. Ct. 156, 13 L.Ed.2d 90 (1964), the right to appeal from an order of deportation is extinguished when the six-month period expires and is not revived by proceedings on a motion to reopen. *See* Rosa v. I.N.S., 440 F.2d 100 (1st Cir. 1971); Gena v. I.N.S., 424 F.2d 227 (5th Cir. 1970); Lopez v. I.N.S., 356 F.2d 986 (3d Cir.) (per curiam), cert. denied, 385 U.S. 839, 87 S.Ct. 88, 17 L.Ed.2d 73 (1966).

Under these circumstances, we are without power to review again the order of deportation entered in 1958, upheld by this Court in 1960, and reaffirmed by the Board in 1965, since Bufalino did not file the present petition until July 27, 1967, beyond the six-month period. Because the petition can be read, however, as seeking reexamination of the Board's June 5, 1967 denial of Bufalino's motion to reopen and reconsider, it may be so construed. Lopez v. I.N.S., 356 F.2d 986 (3d Cir.) (per curiam), cert. denied, 385 U.S. 839, 87 S.Ct. 88, 17 L.Ed.2d 73 (1966).

Thus, judicial review is here limited to the Board's order of June 5, 1967, denying the motion to reopen, and the supplemental order of October 7, 1971, affirming the wiretap decision of Special Inquiry Officer. We must now decide whether the Board abused its discretion in denying Bufalino's motion to reopen. *See, e. g.,* Tupacyupanqui-Marin v. I.N.S., 447 F.2d 603 (7th Cir. 1971); Hun Chak Sun v. I.N.S., 415 F.2d 791 (9th Cir. 1969), cert. denied, 397 U.S. 908, 90 S.Ct. 905, 25 L.Ed.2d 89 (1970); Lopez v. I.N.S., 356 F.2d 986 (3d Cir.) (per curiam), cert. denied, 385 U.S. 839, 87 S.Ct. 88, 17 L.Ed.2d 73 (1966); United States ex rel. Czapkowski v. Holland, 220 F.2d 436 (3d Cir.) (per cu-

riam), cert. denied, 350 U.S. 826, 76 S. Ct. 54, 100 L.Ed. 737 (1955).

Petitioner premised his motion to reopen the deportation proceedings upon three Supreme Court decisions handed down subsequent to the original deportation proceedings: Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); I.N.S. v. Errico, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966); and Woodby v. I.N.S., 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). Petitioner contended, before the Board and in briefs and oral argument before this Court, that these three decisions changed the legal bases supporting his deportation order and that, in view of this alteration in the law, a refusal by the Board to reopen and reconsider constitutes an abuse of discretion.

Before disposing of petitioner's claim that *Woodby, Fleuti,* and *Errico* require the Board's reopening of *his* deportation proceeding, it should be noted that it is unnecessary to decide at this time whether *generally,* and if so to what extent, a subsequent change in case law mandates granting a motion to reopen and reconsider. Although, in the wise employment of judicial power, courts should be wary of affording repeated review of previously decided matters, the effect of later changes in decisional law upon prior deportation orders need not now be determined, since the Board in rendering its decision in this case carefully examined the applicability of these Supreme Court cases and rejected Bufalino's contentions on the merits. Under these circumstances, we need decide at this point only whether, in so denying Bufalino's petition, the Board abused its discretion.

Petitioner has sought reopening of his deportation proceedings in part for a reevaluation of the charge that he failed to report his address in January of 1956 and January of 1957 in violation of § 1251(a)(5). Under this section, authorization is given to deport an alien who has failed to comply with the provisions of § 1305, requiring annual notification of address, unless he satisfies the Attorney General that such failure was "reasonably excusable or was not willful." *See, e. g.,* Klissas v. I.N.S., 124 U.S. App.D.C. 75, 361 F.2d 529 (1966); Patsis v. I.N.S., 337 F.2d 733 (8th Cir. 1964), cert. denied, 380 U.S. 952, 85 S. Ct. 1085, 13 L.Ed.2d 970 (1965); Gallegos-Covarrubias v. Del Guercio, 251 F.2d 519 (9th Cir. 1959); United States ex rel. Czapkowski, 220 F.2d 436 (3d Cir.) (per curiam), cert. denied, 350 U.S. 826, 76 S.Ct. 54, 100 L.Ed. 737 (1955). The Board concluded in 1958 that the charge regarding the failure to report his address was sustained by the evidence of record. This Court in 1960, after carefully reviewing the record, upheld the Board's finding, and based upon our present, independent reexamination of the evidence, we conclude again that there is no basis for disturbing it.

Bufalino argues, however, that his deportability under § 1251(a)(5) must now be reconsidered in light of *Woodby,* which held that evidence as to deportability must be "clear, unequivocal, and convincing." 385 U.S. at 286, 87 S.Ct. 483. Although the standard prevailing at the time of the original deportation order, which was before *Woodby,* required only that there be "reasonable, substantial, and probative" evidence to support a finding of deportability, in this case the *Woodby* standard was nonetheless satisfied. Under § 1251-(a)(5), I.N.S. carries the burden of proving that notification of address, as required by § 1305, has not been made. When that fact was stipulated to at the deportation hearing, the burden of persuasion shifted to Bufalino to establish that his failure to file was "reasonably excusable or was not willful." Assuming, arguendo, that the *Woodby* standard of proof applies in these circumstances, cf. Small v. I.N.S., 438 F.2d 1125, 1128 (2d Cir. 1971); Soares v. I. N.S., 449 F.2d 621 (5th Cir. 1971), the Special Inquiry Officer's finding, that Bufalino's testimony as to his good faith in not reporting his address was deliberately untruthful, supports the Board's view, when denying the motion to re-

open, that the *Woodby* standard had, indeed, been fulfilled.

■■ Moreover, petitioner's further contention, that the term "willful" in § 1251(a)(5) should be interpreted to require evil motive or bad purpose, would appear to be without merit. In addition to the fact that the point was not raised below, *cf.* Unemployment Compensation Comm'n. v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946), the administrative authorities have long interpreted "willful" to mean "intentional." Matter of B, 5 I&N Dec. 692, 693 (B.I.A.). Despite the serious consequences of deportation, deportation statutes are not penal in nature. *See* Woodby v. I.N.S., 385 U.S. 276, 285, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); Ah Chiu Pang v. I.N.S., 368 F.2d 637, 639 (3d Cir. 1966), cert. denied, 386 U.S. 1037, 87 S.Ct. 1490, 18 L.Ed.2d 601 (1967). And the juxtaposition of the terms "reasonably excusable" and "not willful" in § 1251(a)(5) would appear to support the position that "willful" is here to be construed in its ordinary sense.

■ Because a failure to comply with § 1305, requiring aliens to report their addresses, is an independent, deportable offense under § 1251(a)(5), *see* Klissas v. I.N.S., 124 U.S.App.D.C. 75, 361 F.2d 529 (1966); Patsis v. I.N.S., 337 F.2d 733 (8th Cir. 1964), cert. denied 380 U.S. 952, 85 S.Ct. 1085, 13 L.Ed.2d 970 (1965); Gallogos-Covarrubias v. Del Guercio, 251 F.2d 519 (9th Cir. 1959); United States ex rel. Czapkowski v. Holland, 220 F.2d 436 (3d Cir. 1955) (per curiam), it is not necessary to discuss the merits of the other assaults predicated on *Errico* and *Fleuti*, upon the

Board's refusal to reopen.[4] Since the independently deportable offense of failure to comply with § 1305 was properly proved and deportability on that ground has not in the circumstances present here been undercut by the three Supreme Court cases relied upon by Bufalino, the Board did not abuse its discretion in denying the motion to reopen.

■ Although Bufalino seeks review by this Court of the prejudgment issue raised by him elsewhere, see Attorney General v. Bufalino, 125 U.S.App.D.C. 273, 371 F.2d 738 (1966); Bufalino v. Kennedy, 116 U.S.App.D.C. 266, 322 F.2d 1016 (1963), because that issue was neither placed before nor considered by the Board during the proceedings on the motion to reopen, it is not properly before us.

■ Petitioner's argument that his deportation would constitute cruel and unusual punishment is also without merit.

■ Finally, I agree with Judge Van Dusen's concurring opinion that Bufalino has failed to support his contentions concerning electronic surveillance. In this regard, it is appropriate to stress again, that Bufalino's failure to report his address was stipulated to and that, because of his deliberately untruthful testimony, he has not established that such failure was "reasonably excusable or was not willful." Under these circumstances, petitioner's inability to support his wiretap allegations is fatal.

For the above reasons, I would affirm the Board's orders of June 5, 1967 and October 7, 1971.

4. Rosenberg v. Fleuti, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963), would be relevant to an examination of the charge that Bufalino entered the United States without a visa and without inspection after trips to Bimini and Cuba in violation of § 1251(a)(2). I.N.S. v. Errico, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966), sheds new light upon § 1251(f) which forgives illegal entries for aliens with close family ties where they are otherwise admissible at the time of entry. Because Bufalino is properly deportable for having failed to file address reports, it is unnecessary to determine whether, in view of *Fleuti* and *Errico*, the Board abused its discretion in refusing to reopen the earlier deportation proceedings in which it was held that petitioner was also deportable on other grounds, i. e., for having entered the United States in violation of § 1251(a)(2).