Alvaro do Nascimento Guerra SOARES,
Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 71-1442

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 22, 1971.

Rehearing Denied Sept. 21, 1971.

Morton A. Orbach, Miami, Fla., for petitioner.

John N. Mitchell, U. S. Atty. Gen., Dept. of Justice, Washington, D. C., Troy A. Adams, Jr., District Director, I. N. S., New Orleans, La., Robert L. Woytych, District Director, I. N. S., Miami, Fla., Robert W. Rust, U. S. Atty., Robert Silverstein, Asst. U. S. Atty., Miami, Fla., for respondent.

Before JOHN R. BROWN, Chief Judge, and INGRAHAM and RONEY, Circuit Judges.

* [1] Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

INGRAHAM, Circuit Judge:

This case is before us on the petition of Alvaro do Nascimento Guerra Soares (petitioner) for review of an order of the Immigration and Naturalization Service (respondent) under 8 U.S.C.A. § 1105a. This court has jurisdiction by virtue of that section to ascertain whether petitioner has received a full and fair hearing before the Immigration and Naturalization Service, and whether the order of respondent is supported by reasonable, substantial and probative evidence on the record as a whole.

The order under review provided that petitioner be deported from the United States unless he would leave the country as a voluntary departure before the order became effective.

From the record the following facts appear to be undisputed. Petitioner, a 30 year old male native and citizen of Portugal, entered the United States at New York, New York, for permanent residence on July 29, 1968. He entered as a non-quota immigrant upon presentation of an immigrant visa issued to him on the basis of his marriage on August 26, 1967, to a United States citizen. His wife filed the petition for this visa on his behalf.

On December 12, 1968, petitioner's wife secured an uncontested divorce from him in Florida.

Respondent served petitioner with an order to show cause on April 24, 1969, why he should not be deported pursuant to § 241(a) (2) of the Immigration and Nationality Act,[1] and § 241(c) of the Act,[2] for violation of § 212(a) (19) of the Act.[3]

The show cause order alleged, *inter alia*, that petitioner was an alien; that the marriage to a United States citizen, by virtue of which petitioner obtained entry into the United States as a non-quota immigrant, was entered into less than two years prior to his entry; and that the marriage was judicially terminated within two years subsequent to his entry into the United States.

§ 241(c) of the Act provides in part as follows:

"An alien shall be deported as having procured a visa or other documentation by fraud within the meaning of paragraph 19 of section 1182(a) of this title, and to be in the United States in violation of this chapter within the meaning of subsection (a) (2) of this section, if (1) hereafter he or she obtains any entry into the United States with an immigrant visa or other documentation procured on the basis of a marriage entered into less than two years prior to such entry of the alien and which, within two years subsequent to any entry of the alien into the United States, shall be judicially annulled or terminated, unless such alien shall establish to the satisfaction of the Attorney General that such marriage was not contracted for the purpose of evading any provisions of the immigration laws * * * *."

The uncontroverted facts and admissions found in the hearings before the special inquiry officer of the Immigration and Naturalization Service established a prima facie case of deportability under § 241(c) of the Act, *supra*. A heavy burden was thereupon cast upon petitioner to establish to the satisfaction of the Attorney General that the marriage in question was not contracted for the purpose of evading any provision of the immigration laws. Hamadeh v. Immigration and Naturalization Service, 343 F.2d 530 (7th Cir., 1965); Todaro v. Pederson, 205 F.Supp. 612 (N.D.Ohio, 1961); affirmed, 305 F.2d 377 (6th Cir., 1962); cert. den., 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed.2d 124.

1. 8 U.S.C.A. § 1251(a) (2).

2. 8 U.S.C.A. § 1251(c).

3. 8 U.S.C.A. § 1182(a) (19).

Petitioner alleges that several defects occurred during a full hearing before the special inquiry officer, the most serious of which was that petitioner, who does not speak English but does speak Portuguese and some Spanish, did not have the assistance of a translation of a summary of the entire proceedings. The record, however, indicates that an interpreter was present and did translate all questions asked of the alien. Moreover, the record demonstrates that the special inquiry officer offered to review the critical testimony of petitioner's former wife and her brother, but petitioner's counsel waived the translation because he had previously explained that testimony to his client.[4] Finally, there was no complaint by petitioner's attorney at the hearing that the hearing was unfair or that petitioner was unaware of what was transpiring, or that he had insufficient knowledge of the testimony adduced. We conclude from the record that petitioner was accorded due process of law in his hearing before the special inquiry officer. Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966).

We have read the entire transcript of the record in the proceeding below. We agree with the respondent that petitioner failed to discharge his burden of proving that his marriage was not contracted for the purpose of evading the immigration laws. We are convinced that the order of the Immigration and Naturalization Service was supported by reasonable, substantial and probative evidence. Cartellone v. Lehmann, 255 F.2d 101 (6th Cir., 1968); Todaro v. Pederson, *supra*.

Accordingly, under the limited judicial inquiry allowed us by § 106(a) of the Immigration and Nationality Act of 1952, as amended, 8 U.S.C.A. § 1105a, we enforce the order of deportation.

---

4. A reading of the record reveals that the special inquiry officer stated: "In many instances I have reviewed the testimony of the witnesses with the respondent [Soares]. I didn't do it the last time

Mr. Corrigan. I don't know if you wish me to do it or whether you have explained what these witnesses said. COUNSEL CORRIGAN: I have explained what they said."