[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 14, 2005
THOMAS K. KAHN
CLERK

_____

No. 05-10300
Non-Argument Calendar

_____

Agency No. A96-335-053

KUMARALINGEM RAGEEVAN,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(September 14, 2005)

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Kumaralingem Rageevan, through counsel, petitions for review of the Board

of Immigration Appeals's ("BIA") adoption and affirmation of the Immigration Judge's ("IJ's") order directing his removal and finding his applications for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), abandoned. We **AFFIRM**.

## I.  BACKGROUND

Rageevan, a native and citizen of Sri Lanka, arrived in United States territory on 18 January 2004, at San Juan, Puerto Rico, seeking admission into the United States as a nonimmigrant alien. Based on its determination that he was not in possession of a valid immigrant visa, or any other entry document, and that he was likely to become a public charge, the Immigration and Naturalization Service ("INS")[1] arrested Rageevan and detained him at the Tensas Parish Detention Center in Waterproof, Louisiana. The INS subsequently issued to Rageevan a notice to appear ("NTA") before an IJ, charging him with removability under 8 U.S.C. § 1182(a)(4)(A), (a)(7)(A)(i)(I).

On 2 April 2004, Rageevan appeared before an IJ at a master calendar

---

[1] On 25 November 2002, the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2135, was signed into law. The HSA abolished the INS and transferred its functions to the newly created Department of Homeland Security ("DHS"). Because this case was initiated while the INS was still in existence, however, this opinion will reference the INS rather than the DHS.

hearing without counsel.[2]  An interpreter was present for the hearing and translated

the proceedings into Rageevan's Tamil language.  At the start of the proceedings,

the IJ informed Rageevan that he could retain counsel, but Rageevan responded

that he already had an attorney.  Although the IJ had not received notice of

representation from any counsel on Rageevan's behalf, the IJ ordered the

proceedings to be continued so that Rageevan's counsel could appear.  Before

dismissing Rageevan, however, the IJ informed him that he should submit an

asylum application if he feared persecution or torture in Sri Lanka and warned him

about filing a false asylum claim.  During this warning, the interpreter asked the IJ

to repeat himself.  At that time, the IJ repeated the warning about filing a false

asylum claim, but not the need to have the completed application for asylum at the

next hearing.  At the conclusion of the hearing, however, the court officer provided

Rageevan with the I-589 Application for Asylum, and the IJ again instructed him

to have it completed by the next hearing.  The IJ also instructed the court officer to

give Rageevan a list of attorneys.  Rageevan acknowledged that he understood the

IJ's instructions.

On 21 April 2004, the INS personally served Rageevan with notice that his

next hearing would occur on 7 May 2004.  At this hearing conducted via televideo,

---

[2] The record contains no documentation that notice of this hearing was given to Rageevan.

Rageevan appeared again before the IJ without an attorney. While he maintained that he had an attorney, no attorney had filed an appearance with the court, and Rageevan did not have his attorney's contact information at the hearing.[3] The IJ did not ask Rageevan if he wanted to continue with the hearing unrepresented, but rather began to question Rageevan about the matters contained in the NTA. Rageevan testified that: he was a native and citizen of Sri Lanka; he entered United States territory in San Juan, Puerto Rico, on 18 January 2004, seeking entry as a nonimmigrant; he did not have money or other available resources in the United States; and he did not possess an immigrant visa. Regarding his asylum application, Rageevan testified that he had completed the application, but had left it in his dormitory. After Rageevan was allowed the retrieve the application, the IJ asked the court officer to read whether Rageevan had indicated that he had a fear of persecution if he returned to Sri Lanka. The court officer stated that Rageevan had indicated he was seeking asylum based on his membership in a social group, but failed to identify any particular social group. Accordingly, the IJ found Rageevan had failed to return a completed asylum application as required, and therefore deemed his application for asylum abandoned and ordered him removed. The IJ informed Rageevan that the court would reconsider its order if he submitted a completed I-589 form along with a motion to reopen.

---

[3] Rageevan's attorney did not file a notice of appearance until 1 June 2004.

Rageevan, through counsel, appealed the IJ's decision to the BIA. Rageevan argued that his due process rights were violated, inter alia, because he was not given proper notice of his hearings, his hearing was conducted via televideo, he was not given a reasonable opportunity to find another attorney or to file for the relief he sought pro se, and his Alien Registration Number ("ARN") was improperly reported on the Executive Office of Immigration Review's information line.

The BIA adopted and affirmed the IJ's decision. It held that, even though there was no notice in the record of the first hearing, no prejudice occurred because Rageevan attended the hearing. Moreover, the BIA rejected Rageevan's claim that he was not afforded an opportunity to retain counsel because he claimed at both proceedings that he had counsel. Further, the BIA concluded that Rageevan could not establish prejudice with regard to his claim of a due process violation because the IJ offered him the opportunity to submit a completed asylum application and a motion to reopen, but Rageevan failed to do so.

On appeal, Rageevan argues that he was denied his due process rights to counsel and to a fair hearing. Particularly, he asserts that he was effectively denied counsel because of the discrepancy with his ARN and the lack of notice of the time and date of his hearings. In addition, he argues that the proceedings before the IJ were unfair because the record revealed miscommunications during the

5

teleconference and because the IJ conducted the hearing via televideo and therefore did not review personally his asylum application.

## II. DISCUSSION[4]

We review de novo a BIA's dismissal of a petitioner's claim that his due process rights were violated by proceedings before the IJ. Lonyem v. United States Att'y Gen., 352 F.3d 1338, 1341 (11th Cir. 2003) (per curiam). "To establish due process violations in removal proceedings, aliens must show that they were deprived of liberty without due process of law, and that the asserted errors caused them substantial prejudice." Id. at 1341-42.

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend V. Aliens are entitled to the Fifth Amendment's due process rights during deportation proceedings. Reno v. Flores, 507 U.S. 292, 306, 113 S. Ct. 1439, 1449 (1993). In this appeal, Rageevan argues that his Fifth Amendment due process rights were violated because he was denied counsel and because the hearings before the IJ were unfair. We will examine each argument in turn.

---

[4] Because Rageevan's removal proceedings commenced after 1 April 1997, the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), this case is governed by the permanent provisions of the INA, as amended by IIRIRA. See Gonzalez-Oropeza v. United States Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003) (per curiam).

A. Right to Counsel

The right to counsel at a removal hearing, although statutory, see 8 U.S.C. § 1229a(b)(4)(A), is nonetheless grounded in the Fifth Amendment right to due process. See Reno, 507 U.S. at 306, 113 S. Ct. at 1449. According to regulations, an IJ must advise the alien of his right to counsel and the availability of free legal services, ascertain whether the alien desires counsel, and ensure that the alien has received a list of available free legal service programs. 8 C.F.R. § 1240.10(a). An alien may waive the right to counsel if he chooses to proceed without counsel after being appraised of his right to the assistance of counsel. See Cobourne v. INS, 779 F.2d 1564, 1566 (11th Cir. 1986) (per curiam). Moreover, if an alien demonstrates a due process violation, the alien must show that "the presence of counsel might have affected the outcome" before we can conclude that there was "substantial prejudice" as a result of the constitutional violation. Id.

Based on the foregoing precedent, we conclude that Rageevan's allegations fail to demonstrate reversible error based on effective denial of counsel. At the 2 April 2004 hearing, the IJ informed Rageevan of his right to counsel and the availability of free legal services as required by 8 C.F.R. § 1240.10(a). After acknowledging that he understood his rights, Rageevan stated that he had counsel, and the proceedings were continued so that counsel could appear. Thus, although the record does not demonstrate that Rageevan received notice of his first hearing

7

before the IJ, this error did not impact the outcome of his case because no action was taken with respect to his case at the first proceeding. For the 7 May 2004 hearing, however, Rageevan did receive proper notice and therefore could have arranged for appearance of counsel. Although Rageevan argues that a discrepancy with the reporting of his ARN hindered the ability of counsel to appear, the record indicates that Rageevan proceeded with the 7 May 2004 hearing without counsel and admitted to the allegations in his NTA. Thus, by proceeding with the case, Rageevan waived his right to counsel at the May hearing. See Cobourne, 779 F.2d at 1566. Moreover, although Rageevan argues that the assistance of counsel would have aided in the preparation of his asylum application, the record reflects that the IJ informed Rageevan that the asylum application had to be completed by the 7 May 2004 hearing and that Rageevan acknowledged he understood this instruction. Because Rageevan was appraised of his rights and yet proceeded with the 7 May 2004 hearing without counsel, we conclude he waived the benefit of counsel with respect to filing the asylum application as well. Id. Moreover, we note that although the IJ indicated he would grant a motion to reopen if filed, no such motion was ever filed, even after counsel entered a notice of appearance in the case. Accordingly, because Rageevan failed to seek further proceedings, we conclude that any due process violations associated with the lack of notice of the first IJ hearing or the purported ARN reporting discrepancy did not cause

8

substantial prejudice. See Vasquez-Acevedo v. United States Att'y Gen., 131 Fed. Appx. 182, 184 (11th Cir. 2005) (finding alien could not show substantial prejudice where counsel failed to avail the client of IJ's offer to seek additional proceedings). Thus, we reject Rageevan's argument that any due process violations require reversal of the BIA's order.

B. Right to Fair Trial

The Fifth Amendment's guarantee of "[d]ue process is satisfied only by a full and fair hearing." Ibrahim v. INS, 821 F.2d 1547, 1550 (11th Cir. 1987). "The presence of a competent interpreter is important to the fundamental fairness of a hearing, if the alien cannot speak English fluently." Vasquez-Acevedo, 131 Fed. Appx. at 184 (internal quotation and citation omitted). An alien must raise objections to the insufficiency of the translation or hearing accommodations during the proceedings, however, to demonstrate a due process violation. See Soares v. INS, 449 F.2d 621, 623 (5th Cir. 1971); cf. Valladares v. United States, 871 F.2d 1564, 1566 (11th Cir. 1989) ("To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse."). Moreover, to prevail on a due process challenge to the sufficiency of removal proceedings, an alien must show substantial prejudice, which typically requires a showing that the outcome would have differed had the due process violation not occurred. See Ibrahim, 821 F.2d at 1550.

9

Based on the foregoing precedent, we conclude that Rageevan's due process rights to a fair hearing were not violated. Although Rageevan argues that there were some miscommunications with the translator during his removal proceedings, the record does not reflect that he made any mention or objection regarding these purported miscommunications during the proceedings, and therefore he fails to state a due process violation. Soares, 449 F.2d at 623. Moreover, the one particular miscommunication Rageevan cites—the IJ's failure at the first removal hearing to repeat at the translator's request in toto his instruction for Rageevan to complete his asylum application—fails to state a due process violation because the IJ repeated the directive about the need to complete the asylum application later in the first proceeding. In addition, we reject Rageevan's argument that his due process rights were violated on account of the IJ's failure to personally review his asylum application because the proceeding took place via televideo. Had the IJ been physically present to review Rageevan's asylum application, the fact remains that Rageevan did not complete the application because he did not identify that he was part of a particular social group that would subject him to persecution in Sri Lanka. See 8 C.F.R. § 208.3(c)(3) ("An asylum application that does not include a response to each of the questions contained in the Form I-589 . . . is incomplete."). Because his application was incomplete, the IJ's physical review of Rageevan's application would not have changed the outcome of the removal proceedings and

therefore was not a reversible due process violation. See 8 C.F.R. § 1003.31(c) (noting that if an alien fails to submit an application within the time set by an IJ, the IJ may deem the application abandoned); see also Gonzalez-Quintero v. U.S. Att'y Gen., No. 04-14592 (11th Cir. July 7, 2005) (finding no due process violation where the IJ deemed an alien's asylum application abandoned because the alien failed to file a completed asylum application by time ordered by the IJ). Moreover, we note that neither before the BIA nor on appeal did Rageevan argue that the application was complete or that he was part of a particular social group that would have affected the IJ's determination. Thus, we reject Rageevan's argument that his due process rights were violated because he was not afforded a full and fair hearing.

### III. CONCLUSION

On appeal, Rageevan petitioned for review of the BIA's adoption and affirmation of the IJ's order directing his removal and finding his applications for asylum and withholding of removal abandoned. As we have explained, we discern no reversible due process violations in the removal proceedings. Accordingly, the **PETITION** is **DENIED**.

11