[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-10219
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 13, 2011
JOHN LEY
CLERK

Agency No. A088-402-350

SAIDA RAHMATHODJAEVNA AZIZOVA,
RUSTAM NAZRILLAEVICH AZIZOVA,
FARIDA RUSTAMOVNA AZIZOVA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(October 13, 2011)

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Saida Azizova ("Azizova"), the lead petitioner, and Rustam Azizov

("Rustam") and Farida Azizova ("Farida"), the derivative petitioners (collectively

"Petitioners"), seek review of the Board of Immigration Appeals' ("BIA") order affirming the immigration judge's ("IJ") denial of their application for asylum and withholding of removal under Immigration and Nationality Act ("INA") §§ 208, 241, 8 U.S.C. §§ 1158, 1231. Aside from passing references, Petitioners' appellate brief does not raise any arguments regarding relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c); thus, they have abandoned that issue on appeal and we do not address it. *Prado-Gonzalez v. I.N.S.*, 75 F.3d 631, 632 (11th Cir. 1996) (finding that a petitioner abandons an issue on appeal where he does not seek judicial review of that issue in his brief).

Petitioners raise three issues on appeal. First, they argue that the IJ's and BIA's adverse credibility finding was clearly erroneous because it was based on hearsay evidence from an overseas investigation. Second, they contend that their former counsel was ineffective because he failed to object to allegedly inadmissible evidence and the interpreter's allegedly faulty translation during their removal proceedings, which they assert affected the outcome of their case. Third, Petitioners submit that they were deprived their due process right to a full and fair hearing because of faulty translation.

## BACKGROUND

2

Petitioners are native-born citizens of Uzbekistan seeking asylum protection based on the Azizova's claims. Petitioners request asylum on the grounds that Azizova was forced to flee Uzbekistan after being persecuted by the government based on her political opinion. Azizova taught mathematics at the Polytechnic University Lyceum in Tashkent starting in 1995. In 2002, Azizova researched a concept called "critical thinking," presented it to her colleagues, and introduced it into the curriculum with permission of her supervisor. In April 2004, Azizova was instructed by the Department of Internal Affairs of the National Security Service to cease using critical thinking or her employment would be terminated. In June 2004, Azizova spoke out against the Uzbek government in class during a lecture on the comparative minimum wage. She claims that her remarks were sparked by her anger at the recent death of her brother-in-law who, she believed, was arrested due to his political beliefs and who, she believed, died in an Uzbek prison.

One week after her lecture, the police arrested Azizova and demanded $1,000 from Rustam, her husband, for her release. He gathered the money, and she was released. Azizova testified that she was ordered to resign on September 2, 2004, although an investigation by the Department of Homeland Security ("DHS") through the American Embassy in Uzbekistan produced evidence that she resigned on September 2, 2003.

In January 2005, Azizova and a friend were arrested, held for five days, and assessed a fine of $500. Azizova did not mention beatings during this confinement in either her asylum application or in her testimony on direct examination. However, on cross-examination Azizova testified that she had been beaten by the police during this detention. Addressing the discrepancy, she stated that it was difficult for her to remember what happened. In June 2005 the police raided Petitioners' home and "took everything," including the "workbook" Azizova kept with official stamps noting the start and end dates of her government employment. They also threatened Rustam at his business and told him that unless he paid $1,000 per month, his family would be harmed. Azizova produced a copy of her workbook indicating a resignation date of September 2, 2004 to the IJ in September 2009. She stated that her daughter who is still in Uzbekistan had a copy and sent it to her over the Internet.

Farida was admitted to the United States on August 18, 2005 on a nonimmigrant exchange-student visa, and in January 2006 Azizova attempted to visit Farida. Azizova was detained in the airport, transferred to Internal Affairs, and imprisoned. In her aslyum testimony, Azizova testified that she had been beaten once during this period. In the hearing before the IJ, she testified that she was beaten once per month, if not once per week. When confronted with the

4

contradictory testimony, she stated that her asylum application contained only major events. Internal Affairs demanded $4,000 for her release. After six months, Rustam was able to gather the money and she was released. Rustam paid people to bring Azizova through the Uzbek airport, and so she was able to travel to the United States in September 2006.

On September 17, 2006, Azizova and Rustam were admitted to the United States on nonimmigrant visas. In the spring of 2007, Azizova filed an application for asylum protection, listing her husband Rustam and her daughter Farida as derivative beneficiaries. They appeared in Immigration Court in August and September of 2009. At the conclusion of the hearings, the IJ denied Azizova's application for asylum, withholding of removal, and CAT relief. After a timely notice of appeal, the BIA dismissed Azizova's appeal and entered a final order of removal on December 22, 2010.

As part of the investigation into the merits of the claim, the IJ requested that DHS verify Azizova's story. As part of this investigation, they contacted the embassy in Uzbekistan. This investigation led to evidence inconsistent with Azizova's statements. The Human Resources department at the Lyceum indicated that Azizova's supervisor had been terminated in December 2003 or January 2004, not in the spring of 2004, and that Azizova had resigned in September 2003, not in

September 2004. These facts were stated in an email from Rachel Waldstein, with a State Department email address, to Thomas Ayz, a DHS employee working at the Miami Office of Chief Counsel. Ayz testified before the IJ as to the contents of this email.

## STANDARD OF REVIEW

We review the BIA's factual determinations under the substantial evidence test, and affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole. *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 817–18 (11th Cir. 2004). To the extent that the BIA's decision was based on a legal determination, our review is *de novo*. *Id.* at 817. We also review constitutional challenges *de novo*. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010) (per curiam).

We review the BIA's decision as the final judgment. *Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007). However, "[i]nsofar as the Board adopts the IJ's reasoning, we will review the IJ's decision as well." *Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001) (citation omitted).

An alien who arrives in or is present in the United States may apply for asylum. INA § 208(a)(1), 8 U.S.C. § 1158(a)(1). The Attorney General or Secretary of the Department of Homeland Security has discretion to grant asylum

6

if the alien meets the INA's definition of a "refugee." INA § 208(b)(1), 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). The asylum applicant bears the burden of proving that he qualifies as a "refugee." 8 C.F.R. § 208.13(a). To meet this burden, "the applicant must, with specific and credible evidence, establish (1) past persecution on account of a statutorily protected ground or (2) a well-founded fear of future persecution on account of a protected ground." *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007) (citations omitted).

To be withheld from removal under the INA, an alien must show that his life or freedom would be threatened on account of a protected ground. *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004) (per curiam). An alien seeking withholding of removal must show that it is more likely than not that she will be persecuted or tortured upon being returned to her country. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (per curiam). Because this standard is more stringent than the standard for asylum, an alien who fails to

7

establish eligibility under the refugee status is generally precluded from qualifying for withholding of removal.  *Id.*

## I.

We review credibility determinations under the substantial evidence test. *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1255 (11th Cir. 2006) (per curiam).  The trier of fact must determine credibility, and we will not substitute our judgment for that of the BIA with respect to credibility findings.  *D-Muhumed*, 388 F.3d at 818. Under the highly deferential substantial evidence test, we will not reverse an administrative credibility finding unless "the evidence compels a reasonable fact finder to find otherwise."  *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1231 (11th Cir. 2006) (citation and internal quotation marks omitted).

While an adverse credibility finding may be sufficient to support denial of asylum, such a determination does not relieve the fact finder of his duty to consider other evidence presented by the applicant.  *Id.*; *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005).  However, "[o]nce an adverse credibility finding is made, the burden is on the applicant alien to show that the . . . credibility decision was not supported by specific, cogent reasons or was not based on substantial evidence."  *Forgue*, 401 F.3d at 1287 (citation and internal quotation marks omitted).

"Indications of reliable testimony include consistency on direct examination, consistency with the written application, and the absence of embellishments." *Ruiz*, 440 F.3d at 1255. The alien's testimony, if credible, may be sufficient to sustain the burden of proof for asylum without corroboration. 8 C.F.R. § 208.13(a); *Forgue*, 401 F.3d at 1287. "The weaker an applicant's testimony, however, the greater the need for corroborative evidence." *Yang v. U.S. Att'y Gen.*, 418 F.3d 1198, 1201 (11th Cir. 2005).

The REAL ID Act of 2005 amended the INA's asylum provisions under INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii), to provide that an adverse credibility determination can be based on inconsistencies, inaccuracies, or falsehoods, regardless of whether they relate to the heart of an applicant's claim. Pub. L. No. 109-13, § 101(a)(3), (d), 119 Stat. 302, 303–05 (2005).

In this case, the BIA upheld the IJ's adverse credibility finding based on a number of omissions, inconsistencies, and contradictions among Azizova's testimony, asylum application, and overseas investigations. Weighing this evidence, the IJ found that Azizova lacked credibility due to the cumulative material inconsistencies. The IJ based his adverse credibility finding on: inconsistent evidence as to the date of Azizova's resignation and authenticity of letters from her former employer; Azizova's contradictory statements regarding

9

her employment status; Azizova's offering the death certificate of her father-in-law rather than that of her brother-in-law; Azizova's presenting evidence from her workbook when she claimed it had been seized by the government; and Azizova's cursory explanation of the "critical thinking" curriculum, implementation of which she alleges is one of the bases of her persecution. We find that substantial evidence supports the determination by the BIA and the IJ that Azizova's testimony was not credible. The BIA's finding that Azizova's testimony was incredible, together with the insufficient corroborative evidence that she submitted, do not compel a reversal of the BIA's decision to deny relief.

## II.

Pursuant to the Fifth Amendment Due Process Clause, "[a]liens enjoy the right to the effective assistance of counsel in deportation proceedings." *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citation omitted) (involving an application for discretionary suspension of deportation). "[T]o establish the ineffective assistance of counsel in the context of a deportation hearing, an alien must establish that his or her counsel's performance was deficient to the point that it impinged upon the fundamental fairness of the hearing such that the alien was unable to reasonably present his or her case." *Dakane v. U.S. Att'y Gen.*, 371 F.3d 771, 774–75 (11th Cir. 2004) (citation and internal

10

quotation marks omitted).  In addition, a petitioner seeking to reopen her proceedings due to ineffective assistance of counsel must show that counsel's performance was so deficient that it may have affected the outcome of the proceedings.  *Id.* at 775.

We have held that an attorney's deficient representation does not deprive an alien of due process if the inadequate representation only prevents him from being eligible for purely discretionary relief from removal.  *Mejia Rodriguez*, 178 F.3d at 1146, 1148.  However, aliens do have a protected interest in petitioning for asylum.  *Hatian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1038 (5th Cir. Unit B 1982) (finding "in the federal regulations establishing an asylum procedure . . . a clear intent to grant aliens the right to submit and the opportunity to substantiate their claim for asylum").  While the grant of asylum is a matter of discretion lying with the Attorney General, his discretion is not unlimited as it is in purely discretionary relief from removal.  INA § 242(b)(4)(D), 8 U.S.C. § 1252(b)(4)(D) ("The Attorney General's discretionary judgment whether to grant [asylum relief] shall be conclusive unless manifestly contrary to the law and an abuse of discretion.").  Thus, the BIA erred in finding that the Petitioners' ineffective assistance of counsel claim was barred due to the discretionary nature of asylum.

Nevertheless, Petitioners' ineffective assistance of counsel claim based on the non-discretionary withholding of removal was heard by the BIA. Because the Petitioners' asylum and withholding of removal claims are predicated on the same hearing and the same facts, the BIA's failure to address their ineffective assistance of counsel claim for asylum is not reason to remand. *See Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Const. Co.*, 607 F.3d 1268, 1274 n.11 (11th Cir. 2010) (noting that remand is futile when the opinion explores all possibilities of the complainant's allegations).

Petitioners' ineffective assistance of counsel claim fails because they did not show that their former counsel's performance was so deficient that it may have affected the outcome of the proceedings, nor did they show that former counsel's actions prejudiced the outcome. *See Dakane v. U.S. Att'y Gen.*, 399 F.3d 1269, 1274 (11th Cir. 2005) (per curiam).

The Petitioners' first basis for their claim is a failure to object to evidence containing multiple hearsay. To find ineffective assistance of counsel, we must find both that counsel's performance was deficient, and that this deficient performance resulted in prejudice affecting the outcome of the proceedings. Assuming *arguendo* that counsel's failure to object to the email in which the Department of State official provided information stating that Azizova resigned

12

one year prior to the date she claims amounted to deficient performance, Petitioners have not shown that the outcome of their case was prejudiced by such a finding. As stated above, Azizova's resignation date was one of the inconsistencies upon which the IJ based his credibiltiy finding, but not the only one.

Additionally, Petitioners argue that their counsel was ineffective for failing to object to faulty translation. Petitioners again fail to establish that they were prejudiced by failure to object to the translation. They have indicated neither what the ruling on an objection would have been, nor how it would have changed the result of the case. The adverse credibility finding was premised not only on inconsistencies in the testimony at trial, but also on omissions and inconsistencies between information from various sources.

Therefore, we do not find that the petitioners met the standard to show ineffective assistance of counsel.

## III.

"The presence of a competent interpreter is important to the fundamental fairness of a hearing, if the alien cannot speak English fluently." *Matter of Tomas*, 19 I. & N. Dec. 464, 465 (BIA 1987). There is no due process violation where an interpreter translated all the questions asked of the alien and there was no

13

complaint by the petitioner's attorney at the hearing that the hearing was unfair or that the petitioner was unaware of what was transpiring. *Soares v. I.N.S.*, 449 F.2d 621, 623 (5th Cir. 1971).[1]

Because an interpreter was present at the proceedings and translated all the questions, and Petitioners' former attorney did not complain that Azizova was unaware of what was transpiring during the proceedings or make any objections to the translation, there was no due process violation. *See Soares*, 449 F.2d at 623.

## CONCLUSION

Accordingly, upon review of the record and consideration of the parties' briefs, we deny the petition.

**PETITION DENIED.**

---

[1]We have adopted Fifth Circuit precedent decided before the Circuit split in 1981 as binding as binding on this court. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).